May it please the court. I am Rebecca Kurz, arguing on behalf of Mr. Matthew Madden this morning. The first issue the court will need to determine is whether Mr. Madden waived his as-applied challenge to the drug user in possession of a firearm statute, 922 G3, by entering into a diversion agreement. Normally, a guilty plea forecloses any as-applied constitutional challenges, and the government says that Mr. Madden's diversion agreement should be treated exactly as a guilty plea and have the same force and effect. The government points to language in the diversion agreement. It's on page one of the agreement, which is page 22 in your addendum. And the government points out that the agreement states, upon admitting that you committed this offense, and it cites the statute, and accepting responsibility for your conduct by your signature on this agreement, the interest of justice will be served by the following procedure. And then it sets forth what will happen in accepting the diversion agreement, and what will happen if the diversion agreement is breached. But it does not state anywhere in the agreement that it will have the full force and effect of a guilty plea. It says just the opposite. At page 23 of the addendum, second paragraph, the parties further agree that the admissions made by you in this agreement can and will be used against you in connection with any prosecution for the above-described offense. So the agreement is clearly contemplating that there is an upcoming prosecution, even if Mr. Madden breaches the diversionary agreement. At page 24 of the addendum, it states, I hereby waive my right to a jury trial on such charges, and consent and agree that such charges shall be resolved through a stipulated fax at a bench trial. Again, the agreement contemplates a future bench trial if the agreement is breached. It does not say that the agreement is tantamount to a guilty plea. Also, the agreement expressly waives some constitutional rights, but not others. It waives the right to a speedy trial, to a jury trial. It states that there will be no statute of limitations defenses. But it does not contain anything akin to an appeal waiver. It does not contain a waiver saying, for example, I agree not to seek the benefit of any substantive change in the law once I have signed this agreement. That, I think, would have been a surefire way to make this agreement foreclose any as-applied constitutional challenge. Counsel, I think your argument is supported by the fact that a new indictment was filed. True. But there are other issues beyond waiver. Does Madden admit that his conduct violated section 922 G3? Well, in the first passage that I read to you, it sounds as if he did make that admission. But then later in the document, there are statements where it says you're not, it implies he's not admitting guilt, but what he's admitting is the stipulated facts. Right, but I'm talking now beyond the pre-trial agreement, or the diversion agreement, I'm sorry. And at trial, wasn't there a stipulation of facts? Yes, the stipulation of facts from the diversion agreement was submitted. Would that include an admission that he violated 922 G3? I don't think so, and I'm basing that on Beasley's interpretation of 922 G3. Let's say that Bruin and Beasley did not exist. I think you would be correct. But I think after Bruin and Beasley, it's a new ballgame. Because what he admitted to was, I possess marijuana, I possess a firearm, I smoke marijuana every day, I've done so since age five. He had a fanny pack containing 1.23 grams of marijuana and a firearm. So prior to Bruin and Beasley, I think daily usage would count as active engagement with a controlled substance at or near the time the firearm was possessed. I'm trying to think of the language in the Code of Federal Regulations that the ATF provided. But it says, you know, it doesn't have to be on the day the firearm is possessed, it just needs to be in the general time period. But after Beasley, I think the issue becomes far more complicated. Because Beasley said disarming all drug users simply because they are drug users is inconsistent with the Second Amendment. Well, did Madden raise that issue below, the Second Amendment argument? He raised it. Did he just raise a Fifth Amendment argument below? In his initial motion to dismiss, that was a Fifth Amendment vagueness challenge. After the bench trial, in a motion for judgment of acquittal, he raised the Bruin issue. Now, I would say, though, that the government's position at the time of the initial, of the motion to dismiss prior to the diversion, was that it could not be determined pre-trial. Whether it was facial challenge or an as-applied challenge, it couldn't be determined. Because it would require fact-finding as to his specific conduct to determine whether it was unconstitutional as applied to him. The government said, I'm referring to document 33 at page 3, and this has been the diversion case number, the 00121 number. Government said it was entitled to marshal and present its evidence at trial, and have its sufficiency tested by a motion for judgment of acquittal pursuant to Rule 29. So that's what Mr. Madden did. We filed the motion for judgment of acquittal. The government chose, at the time of the bench trial, simply to rely on the stipulated facts. They didn't make any attempt to admit any evidence that would get it over the hurdles created by Bruin and Veasley. It didn't offer historical analysis. And I think with the historical analysis that we now have from Veasley, this presents problems for the government. Veasley looked at, and I'm vastly summarizing here, but looked at two groups of people. Those intoxicated by alcohol. And it found that historical statutes did not simply prohibit or make it a crime to possess a firearm, even if you're intoxicated. You had to use the firearm. Those were the only statutes that existed. Veasley also looked at mentally ill people. It said some mentally ill people were allowed to keep their guns. But if they were mentally ill and dangerous, they could not keep their guns. So, we're adding, 922 G3 does not fit within the historical tradition of depriving intoxicated people who use firearms while intoxicated. And it doesn't fit the historical tradition, because it analogizes to mentally ill people, but who are not dangerous. The way the statute is written, any drug user cannot possess a firearm. This, I think, presents problems and gloops back into the vagueness argument. The statute, I think, is widely recognized. There are Eighth Circuit cases that say it's vague because it lacks a temporal nexus. But adding in a temporal nexus only will not meet the threshold of Bruin and Veasley. You would have to add in either that people intoxicated by alcohol or drugs unlawfully used a firearm, not mere possession. You would have to add in to the limiting construction of this statute that if he's treated analogous to a mentally ill person, excuse me, I have a horrible dry mouth, you have to also show an element of dangerousness. That brings to the separation of powers argument. How can a court add elements to an offense? Only Congress can do that. I want to reserve that remaining time.  Maybe you can nail this down for my benefit. So what's the claim in this appeal? Is it vagueness? Is it Second Amendment unconstitutionality? Is it both? Both. Vagueness, and it requires you to commit. Does the brief, does the appellant's brief identify both claims as being made in this appeal? Yes, I think both claims are raised. Now, I will agree with you that the initial motion to dismiss did not include a Bruin claim. Bruin had not come down at the time that motion was written. So if we were to consider the Second Amendment claim, what's the standard of review in this appeal? Is it plain error? I don't think it's plain error because you're still within the umbrella of vagueness. That statute is vague. Courts have agreed upon that, and courts must impose limiting constructions. But a court can never impose a limiting construction that violates an enumerated right in the Bill of Rights. If it violates the Second Amendment, that limiting construction is no longer good. It's no longer valuable, viable. So whatever limiting construction courts are now going to create for 922G3 after Bruin and Veasley has to conform the statute to the historical record. And punishing all drug users simply because they are drug users, in Veasley it says that violates the Second Amendment. Thank you. Good morning, counsel. You may proceed when you're ready. Police Court, Brian Casey on behalf of the United States. And I think there's two major parts of clarification to start with that I want to address. And the first is clarification to what the government's argument, in fact, is. And the second is clarification as to what Madden's argument has been. Starting with what the government's argument is. The government has never argued that the diversion agreement served as a waiver of the ability to bring the constitutional claim. That hasn't been the government's argument. The government's argument has always been because of what was admitted in the diversion agreement, the as-applied challenge fails. I read the brief just the opposite. Okay. Your Honor, after reading the reply brief, I reread. We don't use the word waiver at any point in our brief. Our point is that given the admissions that were made, you can't make, you can't sustain the as-applied challenge. I think sustain is the word we use. And it's a little bit of complicated analysis that gets there and shows why the Dang case controls, but Dang controls here. And the reason is is because of the very unique nature of void-for-vagueness challenges. A void-for-vagueness challenge largely, with the exception of in the First Amendment context, the overbreadth context, largely there to make a facial void-for-vagueness challenge, you also have to make an as-applied void-for-vagueness challenge. So all void-for-vagueness challenges to be successful have to be successful as applied. And that means that in the cases where, why the cases where there were guilty pleas are still relevant here, and this I'm talking about Dang and Bramer, the reason they're still relevant, the reason they're controlling, is that while the as-applied challenge doesn't survive the guilty plea, the facial challenge does. But the facial challenge then requires a successful as-applied challenge, so the analysis becomes exactly the same. And in Dang in particular, the court held, well, with regard to the Second Amendment challenge, the plea agreement, the plea waived the as-applied challenge. But as a regard to the void-for-vagueness, we need to evaluate the facial challenge revived, so now we need to re-evaluate it, the as-applied void-for-vagueness challenge. And it looked at the facts admitted, and it said, under the facts admitted, the claim simply fails. Are you relying on the factual stipulation after the indictment was refiled, or are you talking about the diversion agreement? Well, this is another piece of clarification. The exhibit at trial was the entire diversion agreement. The entire diversion agreement, with the factual stipulation included in it, was marked as Exhibit 1 given at trial. And this is another reason why Madden's Rule 11 argument simply is irrelevant. Because what we have here isn't a guilty plea. We have facts found at trial. And, in fact, we have a written finding of facts. And in the written finding of facts, the district court cites both provisions, cites the language from the diversion agreement, I entered this agreement because I committed the crime, and the facts from the stipulation that meet each of the elements of the crime. And so the government's relying on both, because both were the evidence at trial, was not objected to, and were the findings of the district court that are not on appeal. And so I think the government gets to rely on both. Under either, though, the government wins. And that kind of brings me to, and I think Dang and Bramer show why the government wins in this context. I think they are controlling. But it brings me to the second point and the second clarification I'd like to talk about. And that's simply, what does the Second Amendment have to do with this? And this has never been brought as a challenge under the Second Amendment. It has always been brought as a Fifth Amendment void-for-begginess challenge. It was originally filed with the first indictment. That was denied because there hadn't been a trial. Diversion agreement was entered into. There's never been a claim that this diversion agreement wasn't free and voluntary. It's free and voluntarily entered into. It does have the effect of law. And he violated his diversion agreement. The case was reinstated. That diversion agreement was used at trial. And then another motion was filed, and it was also a Fifth Amendment motion. It said the challenge was void-for-begginess. Now, it did include language about Bruin. Had Bruin been decided at that point? Bruin had been decided. It did include Bruin. This is pre-Rahimi, but Bruin had been decided. It did include language about Bruin. But it's this same argument where it doesn't actually challenge it on Second Amendment grounds. So can we review that for plain error, or is it just waived by not being brought up below? I think under Rule 12, the Second Amendment claim is waived. The government responded to that original motion saying there is no Second Amendment claim here. The reply brief then proceeded to only brief void-for-begginess. So it was very clear to the district court, and the district court only decided the void-for-begginess issue. So the Fifth Amendment issue, even though Bruin was cited, it was the only issue ever brought below. And that's the same with the opening brief here. So whether it was waiver under Rule 12, or whether it was waiver for not being brought here, the actual Second Amendment issue has just never been brought to this court. And even in looking at the Second Amendment issue. Well, that's why it's asserted in this appeal, right? No, no, no, it's not. It's in the brief. Is it not? Bruin is cited in the brief, but it's not. The challenge isn't a Second Amendment challenge. The challenge is that the statute is void-for-begginess. And this court has, you know, most recent and definitive statement in Carnes, but this court has a very large body of law. Both construing 922G3 and looking at begginess challenges. And this court has a very clear statement about what 922G3 means. It requires active usage, but does not require contemporaneous usage, and does not require contemporaneous intoxication. What the challenge here is, is trying to shoehorn in the Second Amendment analysis into that void-for-begginess challenge, which would require this court to overturn its 922G3 precedent, its Fifth Amendment precedent, and its Second Amendment precedent. So your argument essentially is there is no freestanding Second Amendment claim that's before the court. It's not properly raised. It's not properly preserved. We can't reach it. That's correct, Your Honor. If we were to read the papers differently and we were to say that, well, somehow the Second Amendment is before us, what we do know is you can go back, starting with the Virginia Act of 1655 that says you can't shoot guns when you're intoxicated. And there's a whole line of cases through the entire 18th century and well into the 19th century, and they all seem to be limited to just firing firearms while you're intoxicated. In the middle of the 19th century, you start seeing the first, you know, ban on guns in certain communities that, you know, the regulations in places in the West where they just said firearms are dangerous, too many drunken cowboys were taking away all their guns when they come to town, right? Which is kind of the first possession statutes that show up historically. It's still old, right? It's still fairly ancient stuff. Then you get the first kind of the Opium Den Act, which is kind of the very first drug prohibition thing, and that's not until 1895 or something like that in San Francisco, right? But it is plain that going back prior to the formation of the United States, that firing a gun was prohibited conduct if you were intoxicated, right? And so we've got an issue here in front of us where under the admitted facts, I'm a habitual user, I use drugs daily, I have marijuana in my possession, I have a gun in my possession, and is that sufficient for somebody to draw a reasonable inference that they were in possession of a firearm while intoxicated? I think it could be. I think that inference is reasonable. I think you also put the context in sort of stepping back and looking at overall dangerousness of the context. This was during civil unrest in 2020, and Mr. Madden was encountered because he was throwing water bottles at police officers. And so you have someone kind of engaged in dangerous conduct in a fairly dangerous environment. So you have, as an applied challenge, you know, in the Second Amendment, you'd be looking at he's engaged in dangerous activity, he's armed, he's an habitual user of a controlled substance, and he may or may not be under the influence. That's correct. That's correct. And if I can, I'm sorry, I know I'm out of time, but one more point on this I'd like to make, is the claim was that Veasley somehow changes how this court has interpreted 922 G3. Veasley relies on how this court has interpreted 922 G3. It cites Carnes for what the crime means. So Veasley has said, as interpreted by Carnes, the statute is facially valid under the Second Amendment. So all that would be left is the Second Amendment as applied challenge, which has never been brought and is not raised as a Second Amendment challenge in the briefs. I know my time is up. If no further questions. Thank you. I think not. All right. Counsel, you've expended your time, but we had some questions, so I'll allow two minutes for rebuttal. Thank you. I'll try to be quick. I don't need a freestanding Second Amendment claim in this case. In my reply brief, I cited Loper Bright Enterprises, which is the Supreme Court case that overruled Chevron, and it says, when interpreting ambiguous statutes, try to reach congressional intent within constitutional limits. Anytime a court imposes a construction on an ambiguous statute, it always must be within constitutional limits. That brings the Second Amendment into this issue. Can you do that just willy-nilly? Anytime you want on appeal, you can just say, hey, by the way, this statute is now, in my opinion, ambiguous, and so the entire Constitution can just be trotted out in front of the appellate court without ever giving any court below an opportunity to consider or address it? That seems a bit out there. Well, the briefing was quite full in our Rule 29 motion for judgment of acquittal. We cited the historical statutes that you described when speaking with opposing counsel. We did a reply. Also, the government had said, if this is going to be an as-applied challenge, you have to wait for trial. They could have put on evidence at the bench trial that he used the gun, that he used the gun dangerously, that he threatened somebody with it, but they don't have that evidence. Well, you said a moment ago when you began your rebuttal that you don't need a freestanding Second Amendment claim. Well, that, whether you need it or not, have you asserted in this appeal? That's what I'm trying to pin down. Yes, we have. So you think it's in your brief and it's identified as an issue on appeal? I think, first and foremost, because the statute is vague and that's agreed upon, it then pulls into what kind of limiting construction can a court apply. And it no longer serves the Second Amendment to apply a limiting construction based only on temporal nexus. There must be some type of conduct, dangerousness, or intoxication during use of a firearm. I'm out of time. If there are no more questions, I'll thank the court. Thank you, counsel. The case is submitted. The court will reach a decision in the case as soon as possible. You may stand aside.